O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SCOTT ELLIOTT,<br><br>                Plaintiff,<br><br>v.<br><br>ELLIOT, LEIBL & SNYDER LLP, LONG TERM DISABILITY PLAN; FORTIS BENEFITS INSURANCE COMPANY; and ASSURANT EMPLOYEE BENEFITS,<br><br>                Defendants. | CASE NO. EDCV 07-0418 SGL (OPx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

       This matter is before the Court on administrative review.

       Plaintiff David Scott Elliott currently receives disability benefits from Defendant Union Security Insurance Company ("USIC") under a group disability income policy ("Policy"). The Policy is subject to the requirements of the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff began receiving disability benefits under the Policy on December 20, 1999. In June, 2006, he was awarded Social Security disability benefits that were retroactive to February 1, 2003. USIC recalculated plaintiff's benefits based on the retroactive Social Security benefits award and determined that it had overpaid plaintiff. Plaintiff disagreed, exhausted his administrative remedies, and has now brought suit against USIC to recover withheld benefits from July 20, 2006 through March, 2009, for a total amount of $10,437, plus $151.99 per month going forward. The Court has reviewed the parties' briefs and

the administrative record. Having now carefully considered the full record and arguments of the parties, the Court finds and concludes as follows:

## I.  The Policy

Elliot's employer, Elliot, Leibl & Snyder LLP, held a long-term disability insurance policy for its employees issued by USIC, policy number 4018419. Administrative Record ("AR") 1-37. The Policy was established and maintained under ERISA, and grants discretionary authority upon USIC. AR 30.

Under the Policy, the benefit calculation for long term disability is as follows: The "Schedule Amount minus the Offset Amount" equals the Amount of Benefit. AR 17-21. The Schedule Amount is 60% of monthly pay, with a maximum of $10,000 per month. AR 17. The Offset Amount includes offsets for Social Security benefits. AR 21. The Policy also explains that if the amount of benefits is either more or less than what should have been paid, USIC will adjust the payment accordingly. AR 23. Any overpayment results in a reduction or suspension of benefits until the overpayment is recovered. AR 23.

A cost of living adjustment ("COLA") is also factored into the Policy, and is calculated as follows: "On each anniversary after the qualifying period ends, any benefit payable will be multiplied by 1.00 plus: 3% or the percentage increase in general social security disability payments during the past 12 months, whichever is less." AR 6.

## II.  Factual Background

Plaintiff became disabled on September 21, 1999, as a result of a motorcycle accident. AR 39. On December 20, 1999, after a ninety-day qualifying period, USIC began to pay disability benefits to Plaintiff in the amount of $10,000 per month. AR 39, 81. Then, in June, 2006, Plaintiff received a lump sum Social Security disability benefit award of $67,654.50, which represented retroactive benefits from February 1,

2003, through April, 2006.[1]  AR 165-166.  The Social Security Administration calculated Plaintiff's Social Security benefit award to be $1,811 per month, plus cost of living adjustments.  AR 166.  Plaintiff would continue to receive Social Security benefit awards for a principal amount of $1,811 per month, plus cost of living adjustments.  AR 166.

On July 11, 2006, USIC informed Plaintiff that it had recalculated his benefits based on the retroactive Social Security benefit award according to the terms and conditions of the Policy.  AR 154-156.  USIC subtracted the $1,811 monthly Social Security benefit award from the Schedule Amount of $10,000 per month, resulting in a benefit payable to $8,189 per month.  AR 154-156.  Plaintiff's cost of living adjustment ("COLA") was also recalculated, so that the COLA percentage increase was calculated after subtracting the Social Security benefit monthly award.  AR 154-156.  As a result of the retroactive Social Security award, plaintiff was informed that an overpayment existed.  AR 154-156.

On August 1, 2006, plaintiff's counsel sent USIC a letter that disagreed with USIC's calculation and requested it recalculate plaintiff's benefits.  AR 147-149.  On August 16, 2006, USIC responded and offered a detailed explanation of how plaintiff's overpayment occurred.  AR 742.  USIC explained that plaintiff's first scheduled benefit prior to receiving his first cost of living adjustment was $10,000.  AR 742-743.  Then, beginning December 20, 2000, his benefit was increased.  AR 742.  Under the Policy, the COLA is either "3% or the percentage of increase in general social security disability payments during the past 12 months, whichever is less."  AR 742.   Thus, plaintiff's monthly benefit increased from $10,000 the first year he was disabled to $10,300 the second year he was disabled.  AR 742.  As plaintiff remained disabled during the next calendar year, his benefit increased on December 20, 2001, due to another COLA, thus making his eligible monthly benefit $10,000 +

---

[1] The $67,654.50 award excluded $5,300 in attorney fees.  The total Social Security benefit award was $72,954.50.  AR 168.

$300 + $268, for a total monthly benefit of $10,568. AR 743. USIC's letter went on to explain that, once plaintiff was awarded his Social Security disability benefit, his COLA's had to be readjusted, because COLA's are based on the net eligible monthly benefit. AR 743. Thus, the retroactive Social Security award resulted in a decreased benefit payable on which to calculate the COLA, resulting in an overpayment. AR 743.

Plaintiff's responding letter on August 21, 2006, again disagreed with USIC's methodology and stated that, according to the Policy, the COLA should not have been readjusted as of February 1, 2003, because it was not an anniversary day. AR 142. Plaintiff also stated USIC was not entitled to "back out the cost-of-living increases for 2000, 2001, and 2002 as of February 1, 2003." AR 143. Plaintiff also asked that USIC comply with ERISA claim requirements and provide plaintiff "with the documents and instruments governing the plan, i.e. the policy of insurance." AR 145.

On August 31, 2006, USIC responded, explaining that it did not change plaintiff's 2000 or 2001 COLA, but that his 2002 COLA was adjusted due to plaintiff's February 1, 2003, retro Social Security award, and the fact that his 2002 COLA covered the period from December 20, 2002, to December 19, 2003. AR 739. That COLA adjustment was necessary to allow for the issuance of plaintiff's correct monthly benefit starting February 1, 2003. AR 739.

On September 8, 2006, plaintiff's responding letter asked for a final determination from USIC, and stated, "If I read your letter correctly, you calculate the overpayment as of September 19, 2006 at $45,652.76. I calculate the overpayment as of September 19, 2006 at $36,835.36. You calculate the ongoing benefits at $9,447.13. I calculated the ongoing benefits at $9,617.16." AR 135. On September 18, 2006, plaintiff's counsel stated he had received a copy of the certificate of insurance and summary plan description from plaintiff and that he believed it validated his analysis. AR 131.

On October 9, 2006, USIC reached a final benefit determination and wrote to

plaintiff, again explaining USIC's benefit calculations and the applicable Policy provisions, and enclosing a copy of USIC's Group Claim Denial Review Procedure. AR 732-738.

Plaintiff appealed USIC's determination on October 18, 2006. AR 123-130. USIC informed plaintiff on November 15, 2006, that USIC's determination of overpayment and monthly benefits payable to Plaintiff were calculated correctly pursuant to the Policy. AR 720-730. USIC also explained the offset remains at $1,811, and does not include any cost of living adjustment the Social Security Administration calculates, which is beneficial to plaintiff because the benefit payable does not then decrease because of any increased Social Security cost of living adjustment. AR 109.

Plaintiff appealed again on December 29, 2006. AR 99-101. Plaintiff stated that USIC should not be able to retroactively recalculate or adjust the COLA, and that USIC improperly recalculated COLA increases for December 2000, 2001, and 2002. AR 92. On January 18, 2007, USIC upheld its prior decision, and explained again that its calculation was based on the schedule amount ($10,000) minus the offset amount ($1,811), which thus equals the benefit payable, and that the COLA factor is applied after the offset amount is subtracted from the offset amount. AR 81-87.

Plaintiff filed the instant suit for declaratory relief on April 11, 2007.

### III. Standard of Review

The parties agree that an abuse of discretion standard applies to the Court's review of USIC's determination. Pl. Trial Br. at 4, Def. Trial Br. at 5. Further, when a plan unambiguously gives the plan administrator discretion to determine eligibility or construe the plan's terms, a deferential abuse of discretion standard is applicable. See Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir.2006) (en banc). In the instant case, the Policy unambiguously grants USIC the discretion to construe its terms. As a result, an abuse of discretion standard is appropriate. However, plaintiff alleges USIC has a conflict of interest because of its "dual role of

administering and paying benefits from an ERISA plan" Pl. Trial Br. at 4.

Where an entity both determines eligibility for benefits and pays benefits awards, the court must weigh this so-called "structural conflict of interest" as a factor in determining whether there was an abuse of discretion. Nolan v. Heald College, 551 F.3d 1148, 1153 (9th Cir. 2009), citing Metropolitan Life Ins. Co. v. Glenn, — U.S. — , 128 S.Ct. 2343 (2008). Even if a conflict of interest exists, its significance in determining how much deference to afford the entity's decision depends on the "nature, extent, and effect" the alleged conflict actually had on the entity's decision-making process. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970. The conflict of interest is only one of "several different considerations" the Court is to take into account when evaluating the entity's decision, Glenn, 128 S.Ct. at 2351. The court is "to temper the abuse of discretion standard with skepticism 'commensurate' with the conflict." Nolan, 551 F.3d at 1153. At bottom, even after Glenn and even where a conflict exists, the question is not whether the Court would have approved the claim for benefits. Rather, as the Seventh Circuit has recently explained, "[w]hen the case is borderline . . . the inherent conflict of interest that exists in so many of these situations can push it over the edge-towards a finding of capriciousness." Jenkins v. Price Waterhouse Long Term Disability Plan, 564 F.3d 856, 861-62 (7th Cir. 2009).

## IV.  Conclusions of Law

### A. Plaintiff Has Not Shown that a Strong Weight Should Be Placed on the Conflict of Interest

Plaintiff argues that the Court must take into account "evidence of self dealing" with regard to USIC's decision. Plaintiff also argues that USIC violated ERISA because the records it produced were not "plan documents," and because it did not provide plaintiff with notice of appeals procedures. Finally, plaintiff argued USIC failed to "satisfy the clear statement of the bases for calculating benefits and the regulatory protection of the legitimate expectations of the beneficiary". Pl. Trial Br.

12. Plaintiff's arguments are not persuasive under the facts presented here or governing legal authority.

Beyond the "structural" conflict inherent in the fact that USIC both insures and administers claism under the policy, there is no evidence that USIC engaged in self dealing.

First, USIC provided plaintiff with a copy of the Policy, as well as a copy of the certificate of insurance and summary plan description, which plaintiff's counsel admitted in his September 18, 2006, letter to USIC.  29 U.S.C. § 1102 (a)(1) states that every plan must be established and maintained pursuant to a "written instrument."  The Ninth Circuit in Cinelli v. Sec. Pac. Corp., held that an insurance policy may constitute such a written instrument.  Cinelli v. Sec. Pac. Corp., 61 F.3d 1437, 1441 (9th Cir. 1995).  In this case, the Policy issued by USIC constitutes the "written instrument" mandated by 29 U.S.C. § 1102 (a)(1).

Furthermore, contrary to plaintiff's assertion, the claims procedure and notice of appeals procedure is also specified in the Policy, under the section "Filing a Claim."  Plaintiff was also given notice of the appeals procedure by USIC during the correspondence regarding USIC's calculation of benefits between July and September, 2006.  After USIC's final benefit determination on October 9, 2006, it enclosed a copy of USIC's Group Claim Denial Review Procedure.  AR 732-738.

As to plaintiff's argument that USIC did not clearly state the bases for calculating benefits, the Court has reviewed the entire administrative record, including the Policy, the correspondence between plaintiff and USIC, and USIC's explanation of its calculation and has determined and that the Policy defines the terms Schedule Amount, Amount of Benefit, Offset Amount, Adjustment of Benefits, Lump Sum Benefit and Cost of Living Adjustment.  The Court also determines that the benefit calculations were made pursuant to clearly defined provisions in the Policy.

The Court finds USIC promptly, diligently and adequately investigated

plaintiff's claim, provided the same and consistent reason for its calculation of benefits, and no evidence exists that USIC "repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record" or "malice, of self-dealing, or of a parsiminous claims-granting history." Abatie, at 967-968. As such, the Court declines to give any weight to the "structural" conflict of interest present in the instant case, and reviews USIC's determination under an abuse of discretion standard.

### B.  USIC Did Not Abuse Its Discretion In Its Determination of Plaintiff's Overpayment

Plaintiff argues that USIC improperly applied the COLA, and that it should have applied the COLA before subtracting the offset from the schedule amount. However, upon reading the Policy, the Court finds that USIC's application of the COLA was reasonable.

Under the Policy, the COLA is calculated as follows: "On each anniversary after the qualifying period ends, any benefit payable will be multiplied by 1.00 plus: 3% or the percentage increase in general social security disability payments during the past 12 months, whichever is less."  The USIC's interpretation that the benefit payable is the Schedule Amount (60% of monthly pay, with a maximum of $10,000 per month) minus the Offset Amount is reasonable.  The Offset Amount is defined as follows: "If you are eligible for any of the following benefits, the total of all monthly benefits plus the pro-rated amount of any lump sum payment will be subtracted from the Schedule Amount: ... disability benefits from the United States Social Security Act..."  AR 17.  The Policy also explains that, if the amount of benefits is either more or less than what should have been paid, USIC will adjust the payment accordingly. AR 23.  Any overpayment results in a reduction or suspension of benefits until the overpayment is recovered.  AR 23.

Accordingly, USIC's determination that the COLA multiplier is applied after the Social Security disability benefit is subtracted from the Schedule Amount is

reasonable.

## V. Conclusion

Plaintiff repeatedly accuses USIC of "self-dealing." However, the administrative record is entirely devoid of any such self-dealing on the part of USIC, and none of the evidence that Plaintiff has submitted outside the administrative record shows such self-dealing.

Accordingly, judgment is entered in favor of USIC. Each side is to bear its own costs.

DATE: October 4, 2009

STEPHEN G. LARSON
UNITED STATES DISTRICT JUDGE